KING–STEVENSON GAS & OIL COMPA-
NY, a corporation, Plaintiff in Error,

v.

TEXAM OIL CORPORATION, Defendant
in Error.

No. 42504.

Supreme Court of Oklahoma.

March 17, 1970.

Lewis G. Mosburg, Jr., C. Temple Bixler, Mosteller, Andrews & Mosburg, Oklahoma City, for plaintiff in error.

Fowler, Rucks, Baker, Jopling, Gramlich & Mee, by Richard W. Fowler, Oklahoma City, for defendant in error.

DAVISON, Justice.

The parties occupy the same relative positions in this court as in the trial court. We will refer to the parties by their trial court designation of "plaintiff" and "defendant."

Plaintiff filed the action for the purpose of securing a judgment against defendant for $18,004.00, being one-half of the amounts the plaintiff had paid the United States Government as delay rentals pursuant to the terms of oil and gas leases on lands of the United States. Plaintiff and defendant each owned an undivided one-half interest in the leases. The trial court rendered a general judgment denying plaintiff any recovery against the defendant.

Plaintiff's petition and amendment thereto alleged that on or about June 27, 1960, the parties entered into an agreement for the joint acquisition, development and operation of certain oil and gas leases and properties, which was modified by a later agreement on or about September 16, 1960; that pursuant to the agreement the plaintiff acquired certain described U. S. Government non-competitive oil and gas leases and did assign to defendant an undivided one-half interest therein, and "plaintiff and defendant were tenants in common therein;" that defendant refused to pay its share of the delay rentals, but demanded that plaintiff pay the same, and plaintiff did pay the delay rentals in order to preserve the interests of the parties; and that under the parties' agreement the defendant was obligated to pay its share of the delay rentals.

The defendant filed a general denial.

The parties stipulated that they had entered into the two agreements and pursuant thereto, (1) plaintiff acquired the leases and paid the full acquisition cost thereof ($20,000.00) to the U. S. Government, (2) plaintiff assigned to defendant an undivided one-half interest therein and that on or about November 29, 1960, defendant paid plaintiff the total acquisition cost of $20,000.00 for the assignment, (3)

plaintiff paid the Federal Government $36,008.00 as delay rentals, no part of which had been paid by defendant, and (4) that both agreements were drafted by the plaintiff. A schedule of the leases shows the effective dates thereof were in 1961 or 1962, and that the delay rentals were paid for years ranging from two to four years at the rate of fifty cents an acre per year.

In addition to the stipulation, the plaintiff introduced in evidence the two agreements and some eighteen letters or communications exchanged by the parties. This constituted all of plaintiff's evidence. The defendant announced it had no evidence to offer, and the matter was submitted solely on the stipulation and the other above described instruments.

As stated, the trial court held generally for the defendant, with no statement of findings or conclusions of law.

Plaintiff contends that under the agreements between the parties the defendant was obligated to pay one-half of the delay rentals on the leases in which defendant owned an undivided one-half interest.

It is defendant's position that the terms of the agreements do not obligate defendant to pay any delay rentals on the leases. Defendant also contends that, since the parties were tenants in common in the leases, the defendant was not required to contribute to plaintiff for monies expended by plaintiff to pay the delay rentals.

Both of the agreements were in the form of a letter from plaintiff to defendant which was then accepted by defendant. The initial letter-agreement was dated June 27, 1960, and was accepted by defendant on July 26, 1960. It basically stated the parties' agreement concerning acquisition of the leases by plaintiff and then assigning one-half interest therein to defendant.

The second agreement dated September 16, 1960, and accepted by defendant October 24, 1960, retained the provisions of the first agreement plus some provisions the parties apparently thought necessary to more nearly express their agreement and

provide for operations in the event of production.

Both agreements provided the plaintiff would acquire leases on Federal Acreage in a certain area, and would "advance all funds required for the original lease search, filing fees, bonus or advance rentals, and miscellaneous other expenses in connection with said filing or acreage acquisitions," and that defendant would reimburse plaintiff for the total of such funds expended (not to exceed $20,000.00) and receive one-half working interest in the leases. In this connection, the second agreement also stated it was anticipated there would be no override on the leases when issued.

Both agreements provided, in effect, that the interests of both parties at the time of acquisition would bear the same burdens. This was expressed in the second agreement by language providing that defendant's "acreage shall be acquired subject to its proportional part of all royalties, overrides, oil payments, etc., existing at the time said leases are acquired by" plaintiff. The second agreement additionally stated that "If any additional royalties, overrides, oil payments, etc. should be imposed on this acreage by" plaintiff, it "would be borne" by plaintiff's 50% of the acquired acreage.

The second agreement further stated that plaintiff was operator of the leasehold premises and had attached to it as an exhibit a sample operating agreement "for reference to advise the parties of the kind of agreement to be utilized," but that, "There are no Exhibits and No Accounting Procedure submitted as the parties hereto understand these inclusions are to be negotiated from time to time in advance of drilling."

Thereafter, on November 20, 1961, (about one year after the lease agreement and payment of the $20,000.00 to plaintiff) the defendant wrote a letter to plaintiff inquiring as to the terms under which the leases could be held "after the primary three year period has elapsed" and inquir-ing "at what point the three year paid up rental on the properties began." This letter triggered a series of written exchanges between the parties.

It is our conclusion that these letters reflect and support the following described circumstances and conclusion. At the time of the first agreement the plaintiff knew and the defendant either knew or it was represented to it that, under the then existing Federal Statutes, oil and gas leases like those involved herein were let upon payment of an advance rental for the first year of fifty cents per acre, with the second and third year free, and then twenty-five cents rental per acre for the fourth and fifth years. However, on September 2, 1960, between the first and second agreements, an amendment (Pub.L. 86–705) to 30 U.S.C.A. § 226, became effective whereby free second and third years were eliminated, and an advance delay rental of fifty cents per acre each year was required for the lease term. Plaintiff knew of this change in the law and acquired the leases with the change in the lease provisions, but it is evident that defendant was not informed and did not know of the changed conditions.

In the ensuing written exchanges the defendant took the position that the original understanding was that there would be no rentals to pay for the first three years, that the plaintiff was obligated to pay these delay rentals, and in the end defendant refused to contribute to payment of any of the delay rentals.

As stated above, plaintiff contends that the agreement between the parties obligated defendant to pay one-half of all delay rentals. Plaintiff urges in support of this contention that a consideration of all of the circumstances reveals a situation in which the court should look beyond the mere form of things to their substance and give plaintiff such relief as appears just and right, by requiring defendant to contribute to payment of delay rentals that extended the oil and gas leases.

# 954

We do not find anything in the terms of the two agreements that specifically applies to future rentals. The above narrated and quoted provisions of the agreements, specifying that plaintiff will advance all funds for the original lease search, filing fees, bonus or advance rentals, and that defendant will reimburse plaintiff for all such funds expended, are limited to funds used for those purposes in connection with the *acquisition* of the leases. Also we fail to understand how that portion of the agreement regarding equality of burden on the respective interests by "royalties, overrides, oil payment, etc.," can be expanded to include delay rentals. The provision obviously describes interests payable out of production alone, and not to cash rentals.

Plaintiff also relies upon the sample operating agreement as evidence that defendant recognized that future rental payments would be necessary. One difficulty in giving any weight to this contention lies in the fact that the sample operating agreement appears to have been drafted for use by persons owning individual leases. It provides that delay rentals shall be paid by the party "who has subjected such lease to this agreement," and if not paid, and the lease terminates, "there shall be no monetary liability against" such party, but that the interests of the parties shall be revised on an acreage basis, and the party failing to make the payment will no longer be credited with an interest in the Unit Area on account of ownership of the lease which has terminated. This language does not fit an undivided lease ownership situation, and it is clearly not an expression of a personal liability for refusing to pay delay rentals.

We also point out that the record does not reflect any development of the leases for oil or that there was any oil production. The sample operating agreement remained merely a "sample," without any need to negotiate the matters omitted therefrom and then execute the final agreed contract.

■ It was stipulated that plaintiff drafted the letter agreements. It is well established that an ambiguity in a contract should be resolved against the party who drew it. Bay Petroleum Corporation v. May, Okl., 286 P.2d 269.

■ We have stated that in determining what the parties intended by a contract, the court should, as far as possible, place itself in the position of the parties when the contract was made, and to the extent that their mutual intention is ascertainable and lawful, give effect thereto. Cities Service Oil Co. v. Geolograph Co., 208 Okl. 179, 254 P.2d 775.

In the present case the plaintiff prepared the first letter agreement and it was accepted by defendant. Plaintiff prepared the second agreement in accordance with what it deemed necessary to more clearly reflect the agreement. After having exercised this care to express the full agreement of the parties, we find it inconceivable (and apparently also the trial court) that a subject as important and valuable as the personal obligation of the defendant to pay or contribute to payment of delay rentals would be expressed in language as inconclusive and foreign thereto as that employed in the letter agreements. In this connection, there is the matter of plaintiff's knowledge of the change in the Federal Statutes between the first and second agreements, whereby free rental years were eliminated. It is only reasonable to conclude that if defendant was to be personally liable for delay rentals, then plaintiff with this knowledge, would have incorporated such personal liability in the final agreement by appropriate words.

■ Courts cannot supply material stipulations or read into the contract words or terms it does not contain. The law will not make a better contract than the parties themselves have seen fit to enter into, or alter it for the benefit of one party to the detriment of another. Cities Service Oil Co. v. Geolograph Co., supra.

■ It is our conclusion that the parties' agreement did not personally obligate the defendant to pay one-half of the delay rentals.

Plaintiff further contends, as a proposition related to its first contention herein, that the parties presumably contracted with knowledge of the law governing Federal oil and gas leases. Plaintiff's theory is that by law the provisions of the amended Federal Statute, supra, became a part of the parties' agreement and therefore defendant acquired its interest burdened with the statutory provision requiring payment of delay rentals.

■ Defendant in effect concedes that applicable or relevant statutes become a part of a contract and that payment of delay rentals was required to keep the leases in force. Defendant's position is that the real and limited issue presented by plaintiff's proposition is the question of defendant's *personal* liability to its cotenant (plaintiff) after plaintiff had paid all of the delay rentals. We believe this is correct.

We again point out that there was no showing of development or production from any of the leased acreage.

The general rule is stated in 20 Am.Jur. 2d, Cotenancy and Joint Ownership, § 65, pp. 159, 160, as follows:

"A cotenant entitled to contribution for expenditures made in protecting or preserving the common estate may enforce his right personally against his cotenant if the latter has agreed to or may be deemed to have authorized such expenditures. But in the absence of such an agreement, the right to contribution is enforceable by way of a personal judgment against a delinquent cotenant only where, at the time of the payment, he is personally liable for the debt paid by the cotenant seeking contribution. Thus, a cotenant who pays off a mortgage or other lien on the common property is not entitled to a personal judgment for contribution, where the other cotenant, at the time of payment, is not personally liable for the debt secured by the lien. This is so because one cotenant cannot, by paying off the debt, deprive the other

cotenants of their right to elect to give up the land rather than to pay. * * *"

We have held herein that the agreements between the parties did not personally obligate defendant to pay the delay rentals.

■ Also 30 U.S.C.A. § 226, supra, establishing a delay rental of fifty cents per acre per year, has no provision making payment of the rental a personal obligation of the lessee. Title 30 U.S.C.A. § 188, provides in part that " * * * upon failure of a lessee to pay rental on or before the anniversary date of the lease, for any lease on which there is no well capable of producing oil or gas in paying quantities, the lease shall automatically terminate by operation of law * * *." In In Gibbons v. Pan American Petroleum Corporation, 262 F.2d 852 (10th Cir. 1958) the court, in referring to the above quoted portion of Sec. 188, stated as follows: "The undisputed purpose of this provision was to effect automatic termination of federal leases for non-payment of such rentals, thus obviating the accrual of the rentals as a debt against lessees."

In view of this authority we must conclude that the federal statutes do not make the delay rentals a personal obligation of the lessee.

■ Plaintiff argues that it would be unfair for the defendant to have the benefit of the extension of the leases and not be held liable to contribute to the payment of the delay rentals.

A similar situation was presented in Katnig v. Johnson, Okl., 383 P.2d 195, where the lease provided that it became void except as to ten acres surrounding the first well, unless an additional well was begun within one year from the completion of the first well. Katnig (owner of an undivided mineral interest) drilled a non-productive second well and saved the lease. He then sued his cotenant mineral owner Johnson, claiming Johnson was obligated to pay a proportionate share of the second well cost. We stated and held as follows:

"The plaintiff contends 'that the defendant could not accept the benefits of

a requirement of such provision in a contract and deny all liability for that which was done to preserve his interests;'

\* \* \*

"In the case of Superior Oil Company v. Oklahoma Corporation Commission, 206 Okl. 213, 242 P.2d 454, 456, we held that an owner of an undivided mineral interest in a forty acre tract had inherent right to drill such land for oil and gas and 'he thus assumed the entire risk of the venture if it proved a failure.' Thus we see that defendant Johnson was not required to participate in the drilling by plaintiff Katnig of Well No. 2, unless he be found to have agreed to do so."

The Katnig decision is adverse to plaintiff's contention.

In its reply brief the plaintiff for the first time contends that the parties were engaged in a joint enterprise or joint adventure. The case was not tried on this theory. Plaintiff alleged in its petition that the parties were cotenants. It appears from the record and the initial briefs that it was tried in the trial court and presented in this court as a matter involving liabilities of cotenants to each other on the grounds above discussed.

■ Even if the above theory could be raised at this stage of the case such contention would be without merit. In Pfleider v. Smith, Okl., 370 P.2d 17, we said that in order to form the joint adventure relationship: (1) There must be joint interest in the property by the parties sought to be held as partners; (2) there must be agreements, express or implied, to share in profits and losses of the venture; and (3) there must be actions and conduct showing cooperation in the project. "None of these elements alone is sufficient."

■ In the present case the parties have undivided interests in the minerals that were acquired pursuant to an agreement that went no further than lease acquisition, except that there was a contemplated sample operating agreement. The "sample" operating agreement itself left some matters open for further agreement. It never

became a completed and binding contract. There was no development and production. It is obvious from our prior holdings herein that there was no agreement to share expenses in the nature of delay rentals.

There was no joint enterprise.

The judgment of the trial court is affirmed.

All Justices concur.