1997 OK 154

Elisa McMINN, Executrix of the Estate of Henry C. McMinn, Deceased, Plaintiff/Appellee, Counter Appellant,

v.

The CITY OF OKLAHOMA CITY, a Municipal Corporation, Defendant/Appellant Counter Appellee,

Board of County Commissioners of Oklahoma County, Oklahoma; and Oklahoma City–County Health Department, Defendants.

Elisa R. McMINN, Executrix of the Estate of Henry C. McMinn, Deceased, Plaintiff/Appellee Counter Appellant,

v.

BOARD OF COUNTY COMMISSIONERS OF OKLAHOMA COUNTY, Oklahoma, and City of Oklahoma City, a Municipal Corporation, Defendants/Appellants Counter Appellees,

and

Oklahoma City–County Health Department, Defendant.

Nos. 86189, 86226.

Supreme Court of Oklahoma.

Dec. 23, 1997.

Robert W. Amis, Easley & Amis, Piano, Texas, for Elisa McMinn.

William O. West, Patricia Sellers Dennis, Oklahoma City, for the City of Oklahoma City.

Robert H. Macy, District Attorney, Aletia Haynes Timmons, Assistant District Attorney, Oklahoma City, for Board of County Commissioners, Oklahoma County.

Greg James, James & Wagner, Oklahoma City, for Oklahoma City–County Health Department.

SUMMERS, Vice Chief Justice.

¶ 1 Two appeals arising out of the same litigation are disposed of in this opinion. The essential questions are (1) is the estate of a former City County Health Department employee entitled to the retirement benefits he would have received had he been simply a City employee? (2) Did the employee's estate have due process in the trial court's calculation of the amount due? (3) May one division of the Court of Civil Appeals in essence overrule another division of that court on an issue that has become the law of the case? Our answers are yes, no, and no, in that order.

¶ 2 Henry McMinn was an Oklahoma City employee in 1956. The City of Oklahoma City and the Oklahoma County established a joint health department, called the City County Health Department, and McMinn began working for it. He was paid by the City for the first years. In 1965 the Health Department began receiving funds from a special county tax, and its employees, including McMinn, were paid from these funds. Those employees previously employed by the City were allowed to remain in the City retirement system, while other employees were placed in the County retirement system.

¶ 3 After working for the City and the City County Health Department for 31 years, McMinn retired for health reasons. The County told him he was not part of its retirement system. The City, rather than paying him full retirement benefits, agreed to pay him a retirement pension, but refused to provide any fringe benefits such as health and life insurance, payment for unused sick leave or a bonus for early retirement. The City routinely paid such benefits to other City employees retiring. The basis for the City's decision was a 1965 contract between the City and the County entered into at the beginning of the joint venture. The City believed its only responsibility was to pay McMinn his pension.

¶ 4 McMinn[1] sued the City of Oklahoma City, the Board of Commissioners of Oklahoma County and the City County Health Department, asking for a declaratory judgment as to what retirement benefits he was entitled. The County and the Health Department filed a motion to dismiss. The trial court dismissed the Health Department and the County.[2] McMinn appealed, urging that he had stated causes of action against both the City and the County. He urged that the unequal treatment given to him as compared with other City or County employees was sufficient to show a discriminatory classification or denial of equal protection. The Health Department and the County disagreed, urging that the statute of limitations had run and that there was no constitutional violation in their treatment of McMinn.

¶ 5 In an unpublished 1991 opinion, (Sup. Ct. Cause No. 71,896), the Court of Appeals, Division II, held that the statute of limitations had not run. It also held that McMinn had stated a claim against all parties and that the trial court's dismissal was improper. It continued by stating that "[e]qual treatment of public employees who work under similar circumstances is a matter of public policy as well as personal right", relying on *Kirk v. Board of County Comm'rs*, 1979 OK 80, 595 P.2d 1334, and *Mando v. Beame*, 398 F.Supp. 569 (S.D.N.Y.1975). It held that this disparate treatment could be the basis of a cause of action, and remanded to the trial court for further proceedings. This Court of Appeals' decision became final after certiorari was denied here.

¶ 6 On remand to the trial court a hearing was held and evidence presented as to the benefits received by other City and County employees, and those received by McMinn. The trial court, quoting directly from the earlier Court of Appeals' opinion, held that the unique relationship between the City, County and the Health Department made them potentially jointly liable for the unequal treatment of McMinn. While hold-

ing that the constitutional violation did not survive McMinn's death, the court stated that there is a public policy basis for the claim of unequal treatment which did survive. It went on to say that it was a violation of public policy to treat McMinn differently than he would have been treated if he were a City employee, and that at the time he retired he was entitled to all retirement benefits and fringe benefits he would have received had he been a City employee on the date of his retirement. The court further held that all three entities should bear the costs equally. The court found no breach of contract. At a subsequent hearing the court awarded damages to McMinn in the amount of $4450.50.

¶ 7 All parties except the Health Department appealed this ruling. The City appealed, urging that the trial court erred in finding McMinn was entitled to be treated as a City employee. The County appealed, alleging error in the trial court's ruling that the expense be shared equally. McMinn counter-appealed, alleging error in the ultimate calculations made by the City. In the first part of this opinion we address only the arguments raised by the City in Case No. 86,169 and by McMinn in his counter-appeal. The County's appeal and the Plaintiffs' petition for certiorari in cause no. 86,226 are addressed in the second part of the opinion.

¶ 8 In its two unpublished opinions the Court of Appeals, Division I held that there was no cause of action for "unequal treatment" of employees. Although the issue was not raised or briefed by any of the parties, Division I determined that Division II's 1991 discussion of "unequal treatment" was merely dicta, and therefore was not the law of the case. Because the case against the City was still pending during the first appeal, the appellate court observed that the 1991 decision was not binding on the City. The trial court's judgment for Mrs. McMinn was reversed in light of Division I's decision that no damages were available to McMinn. We

---

1. During the litigation McMinn died, and his wife, Elisa McMinn, was substituted as the executrix of his estate.

2. The record is ambiguous as to whether the City was affected by this motion to dismiss. We find

no document filed by the City which would suffice as a motion to dismiss. We thus proceed as if the City was not dismissed by this action, and was thus not affected by the subsequent appeal and Court of Appeal's opinion in 1991.

granted certiorari, treated these related appeals as companion appeals, and now adjudicate both on certiorari with a single opinion. Okla.Sup.Ct.R. 1.27(d); *Redding v. State,* 1994 OK 102, 882 P.2d 61.

## APPEAL NO. 86,189: CITY'S APPEAL AND McMINN'S COUNTER APPEAL

¶ 9 The City raises two issues: (1) the contracts governing the benefits of McMinn did not require that he be paid insurance benefits or sick leave, and (2) McMinn was treated similarly to others in his same position, except that he was actually given more benefits than he was entitled. McMinn, in response, asserts that he was not treated as other City employees, and that the contracts governing the relationship could not be interpreted to permit him to be given fewer benefits than other City employees. In his counter-appeal McMinn asserts that the benefits as calculated by the City were incorrect for a variety of reasons: (1) the City failed to follow the instructions of the trial court by failing to give him sick leave benefits accorded to other city employees, and (2) error occurred because he was not permitted to cross-examine the city's employee who figured the benefits, and that evidence which would have been discovered through this cross-examination would show that the calculations were not in accordance with the trial court's command.

¶ 10 We first address the arguments of the City. The City urges that the 1965 contract governs the rights of McMinn, and that the contract did not provide for any retirement benefit except payment of the monthly pension. The pertinent clause in the 1965 contract reads:

10. The parties hereto agree as follows:

(a). Those employees of the City–County Health Department who, prior to July 1, 1965, are paid from the City's General Fund and are transferred to the payroll of the City–County Health Department on the 1st day of July, 1965 and are entirely compensated from the proceeds of the said constitutional tax levy, shall be permitted to continue to retain their status in the Employees' Retirement System of Oklahoma City, Oklahoma, *and shall be classified as City employees for retirement purposes.* (emphasis added).

The trial court found that there were no contractual violations in the City's treatment of McMinn, instead choosing to base its decision on public policy.

¶ 11 This Court is not bound by the reasoning of the trial court. If that court reaches the correct result we may affirm if there is a different but proper legal theory upon which to base the decision. *Brashier v. Farmers Ins. Co. Inc.,* 1996 OK 86, 925 P.2d 20, (a legally correct decision will not be reversed because it is based on faulty reasoning, an erroneous finding of fact, or consideration of immaterial issues); *Matter of Estate of Maheras,* 1995 OK 40, 897 P.2d 268. We affirm the decision of the trial court, but do so on the basis of our reading of the employment contract.

¶ 12 The City would narrow the definition of "retirement purposes" as used in the 1965 contract to include only the payment of a monthly pension. Had this been the intent of the drafters of the contract, we believe the more narrow term "pension" would have been used rather than the word "retirement." In the business world retirement benefits may include a great deal more than a monthly pension payment. These benefits can encompass, e.g., life and health insurance for both the retiree and their spouses and dependents. M. Canan and W. Mitchell, *Employee Fringe and Welfare Benefit Plans, §§ 10.4 and 10.7* (1997 ed.).

¶ 13 "Pension" is defined as a "retirement benefit regularly (normally monthly), with the amount of such based generally on length of employment and amount of wages or salary of pensioner." Black's Law Dictionary (5th Ed.1979). Retirement benefits include pensions, but can also include much more, such as insurance coverage and profit sharing. *Incorporated Village of Lynbrook v. New York State Public Employment Relations Bd.,* 64 A.D.2d 902, 408 N.Y.S.2d 106, 107 (1978), (hospital insurance for the families of deceased retirees is a retirement benefit).

¶ 14 When terms in a contract are susceptible of two constructions, the contract will be interpreted in a manner which is fair and rational, rather than in a manner which would reach an inequity. *Mortgage Clearing Corp. v. Baughman Lumber Co.*, 1995 OK 40, 435 P.2d 135, 138. If terms in the contract are ambiguous, it must be construed against the drafter of the contract. *Dismuke v. Cseh*, 1992 OK 50, 830 P.2d 188, 189; *King–Stevenson Gas & Oil Co. v. Texam Oil Corp.*, 1970 OK 45, 466 P.2d 950.

¶ 15 Here the City had opportunity to chose the terms used in the contract. It chose to use the broader phrase "retirement purposes" instead of the narrower phrase "pension purposes." It would be unfair and illogical to interpret the contract in its most narrow sense to limit the benefits of individuals in the situation of McMinn, while providing additional benefits to persons employed by the City. We thus adhere to the rule of construction in *Mortgage Clearing Corp., supra*, and interpret the phrase in its broader sense.

¶ 16 We hold that the 1965 contract requires that individuals in the employ of the City prior to 1965 and who became employees of the Health Department be treated as City employees for the full range of retirement benefits. If a City employee receives a monthly pension in addition to bonuses, insurance benefits, payment for vacation or sick leave, a Health Department employee who was employed by the City prior to 1965 is entitled to the same benefits. We thus affirm the trial court's ruling that McMinn should be treated as if he were a City employee for the purpose of determining his retirement benefits. In light of this ruling we need not address the City's public policy argument.

¶ 17 We next turn to the issue raised by McMinn in his counter appeal. McMinn asserts that the judgment amount does not reflect the correct amount of benefits to which he was entitled. After the trial court ordered he be given the same benefits as other City employees, the court appointed the City to do the calculations. The City completed the calculations, and presented them to the trial court in the form of a letter. In this letter the City calculated the additional benefits owed to McMinn to be $4,450.50. At a hearing, the trial court reviewed the calculations submitted by the City. McMinn urged that he should be allowed to cross-examine the City with regard to the calculations. Apparently, this request was denied,[3] and the court entered judgment in favor of McMinn in the amount of $4,450.50. McMinn filed a motion for new trial, asserting that after the hearing it was discovered that the City had calculated his benefits as if he were a Health Department employee, rather than a City employee as directed by the trial court. He asserted that the amount owed was approximately $14,000.00. The trial court denied the motion for new trial.

¶ 18 In rebuttal the City does not deny that McMinn objected to the calculations, but urges that it was only acting as an agent and scrivener for the court, and was therefore not subject to cross-examination. The City also urges that the calculations could have been reviewed prior to the hearing, and that McMinn was not diligent in his efforts. For these reasons the City urges that the trial court was correct in denying the motion for new trial.

¶ 19 A trial court is vested with broad discretion in granting or denying a new trial. *Dominion Bank of Middle Tennessee v. Masterson*, 1996 OK 99, 928 P.2d 291, 294. Unless it is apparent that the trial court erred in some pure simple question of law or acted arbitrarily the ruling will not be disturbed on appeal. *Id.; Poteete v. MFA Mut. Ins. Co.*, 1974 OK 110, 527 P.2d 18.

¶ 20 Such error is apparent in the present case. McMinn, after asking for an opportunity to cross-examine the City as to its methods of calculation, was denied the chance to cross-examine. Although the City asserts that this denial was permissible because it was acting only as an agent, the City fails to note that regardless of its actions, it remained a party in the case. The judgment as rendered by the trial court was reached after a party in the case determined dam-

---

**3.** The record contains no transcript of this hearing.

ages, without being required to stand for cross-examination as requested by the opposing party.

¶ 21 In *Wolfenbarger v. Hennessee,* 1974 OK 38, 520 P.2d 809, 812, a pawnbroker's license was revoked at an administrative hearing without first permitting him to cross-examine the witnesses speaking against him. We held that parties must be given the opportunity to cross-examine witnesses and to present evidence. Failure to do so was a denial of due process. *Id.* at 812, citing *Goldberg v. Kelly,* 397 U.S. 254, 269, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970). Likewise in *Leck v. Leck,* 1990 OK 117, 800 P.2d 249, we held that a defending party must be given the opportunity to present evidence; otherwise the party would suffer a violation of his constitutional right to due process. *Id.* at 250; *Boatright v. Perkins,* 1995 OK 34, 894 P.2d 1091, 1095.

¶ 22 The City asserts that McMinn received the letter prior to the hearing, and should have investigated. The City also claims that the letter is perfectly clear as to the method of calculating the damages. We disagree with both of these arguments. McMinn stated in his brief in support of his motion for new trial that he had attempted to question the City as to the amount of damages, and that the City would only tell him that it was far less than the damages as calculated by McMinn. It is our conclusion that McMinn was entitled to cross-examine the City's witness as to the basis of its calculations, and to present witnesses if necessary. The trial court erred in its resolution of the question of law as to whether due process required McMinn be given an opportunity to cross-examine. We hold that it was thus error to refuse a new trial on this issue. *Dominion Bank, supra.*

¶ 23 The Court of Civil Appeals, Division I, rendered two separate opinions in appeal Nos. 86,189 and 86,226. Each purported to essentially overrule Division II's earlier holding that the City and the County were jointly liable as a matter of public policy. But because McMinn's claim against the

City still pended in the District Court when the first Court of Appeals opinion (Division II) held all defendants liable, we do not take that opinion to be binding on the City. We vacate the opinion of the Court of Civil Appeals in Cause No. 86,189. The trial court's judgment against the City is affirmed as to the issue of liability, but reversed as to damages, and the cause remanded on Plaintiff's right to cross-examine on that subject.

## APPEAL NO. 86,226: THE COUNTY'S APPEAL

¶ 24 The Court of Civil Appeals,[4] Division I, in holding that McMinn had no cause of action essentially overruled Division 2's earlier opinion. The County was clearly a party Appellant in the first appeal. Although the issue was not raised by the County nor any of the parties in the second appeal, Division I determined that the earlier opinion's discussion of "unequal treatment" was merely dictum, and therefore was not the law of the case. The plaintiff's judgment was reversed, and the case remanded in light of the appellate court's decision that no damages were available to McMinn. We have also granted certiorari in this case.

¶ 25 The law-of-the-case doctrine, acknowledged by this Court as early as 1915, is a necessary rule in order to prevent the re-litigation of issues already decided. *In re Estate of Severns,* 1982 OK 64, 650 P.2d 854, 856, citing *Wellsville Oil Co. v. Miller,* 48 Okla. 386, 150 P. 186 (1915), *aff'd,* 243 U.S. 6, 37 S.Ct. 362, 61 L.Ed. 559 (1917); *In re Estate of Eversole,* 1994 OK 114, 885 P.2d 657, 661. Decisions made in an earlier appeal are the law of the case as to the issues resolved therein. *Id.; Handy v. City of Lawton,* 1992 OK 111, 835 P.2d 870, 873. Once an appellate court decision is final, it is binding in all subsequent stages of the case. *Id.* "NO question expressly decided or impliedly determined on a former appeal can be reversed on a second appeal between the same parties in regard to the same subject matter." *Severns,* at 856. When an issue

4. In Oklahoma the Court of Appeals was renamed the Court of Civil Appeals by the Legislature in 1996.

524

has been presented to the Court of Appeals, and a decision reached on that issue, the first determination becomes conclusive and cannot be re-examined once it is final. *C.F. Braun & Co. v. Corp. Comm'n,* 1987 OK 52, 739 P.2d 510, 514; *Cavett v. Peterson,* 1984 OK 59, 688 P.2d 52. The sole remedy available from an erroneous decision of that Court is the writ of certiorari. *Severns,* at 856. Our Rule 1.171, Supreme Court Rules, provides:

Each division of the Court of Civil Appeals shall have power to determine or otherwise dispose of any case assigned to it by the Supreme court, and its decision in the case, when final, shall [not] ... be subject to reexamination by another division of the Court of Civil Appeals.

¶ 26 Here, two central issues were presented to the Court of Appeals in the first appeal: (1) whether the plaintiff had stated a cause of action against the County and the Health Department, and (2) whether the statute of limitations had run on that cause of action. The Court of Appeals addressed both issues, and both were necessary for a complete resolution of the case. Division 2 of the appellate court held that McMinn stated a cause of action against the defendants, that cause of action being grounded in both constitutional and public policy concerns, and that the defendants could be jointly liable, in light of their joint involvement during the course of McMinn's employment. The court cited cases claimed to be in support of its result. The court further held that this cause of action was not barred by the statute of limitations.

¶ 27 In the second appeal the Court of Civil Appeals re-opens one of these issues finally determined, and holds that McMinn does not have a cause of action for "unequal treatment against the County." It suggests that the cases cited in the first opinion do not support its holding. Seeking to avoid the law-of-the-case doctrine, the Court holds that any discussion on "unequal treatment" and joint liability in the earlier opinion was merely dictum. We must disagree. The issues of "unequal treatment" and joint liability were necessary and integral parts of the decision made in the first appeal. Without a decision on those issues the appeal would not have been fully resolved. The first Court of Appeals' decision became the law of the case as to the County and the Health Department.

¶ 28 Regardless of whether the Court of Civil Appeals would have reached a similar conclusion in a later appeal, it was not free to disregard this earlier holding once it became final. Division I was bound by the decision reached in the earlier 1991 opinion by Division 2. On certiorari we vacate the opinion of Division 1 of the Court of Civil Appeals rendered in 1997 in Cause No. 86,226.

¶ 29 On appeal the County does not contest the trial court's calculations, but continues to dispute its liability. The County's liability, however, was fully adjudicated by the Court of Appeals, Division II, in 1991. This Court did not grant certiorari. The County's liability is the law of the case. There is nothing before us to further adjudicate on appeal.

## CONCLUSION

¶ 30 Both 1997 opinions of the court of Appeals (Division I) are vacated. The trial court's judgment pronouncing liability on each of the Defendants is affirmed, except as to the amount. The cause is remanded to the District court of Oklahoma County for the sole purpose of allowing the Plaintiff to cross-examine the City's witness, and produce witnesses herself if she chooses. The trial judge shall thereupon enter judgment for the Plaintiff in the proper sum.

¶ 31 KAUGER, C.J., and HODGES, LAVENDER, OPALA, ALMA WILSON and WATT, JJ., concur.

¶ 32 SIMMS, J., concurs in result.

¶ 33 HARGRAVE, J., dissents.