2000 OK 56

William C. DIXON, Plaintiff/Appellant,

v.

Meredith BHUIYAN, and the Board of Regents for Tulsa Community College, formerly Tulsa Junior College, Defendants/Appellees.

No. 92,303.

Supreme Court of Oklahoma.

July 18, 2000.

John F. Bates of Tulsa, OK, for appellant.

Thomas L. Vogt of Jones, Givens, Gotcher & Bogan, Tulsa, OK, for the appellee.

LAVENDER, J.:

¶ 1 The resolution of today's cause rests upon the Court's characterization—as either "at-will" or impliedly contractual—of the employment relationship between Dixon [appellant] and Tulsa Community College [TCC or appellee] at the time of appellant's discharge. We hold that it is the latter.

## I

### FACTS AND PROCEDURAL HISTORY

¶ 2 Dixon was an adjunct professor at Tulsa Community College or its predecessor Tulsa Junior College for seven years. During a spring 1995 course Dixon and one of his students—Meredith Bhuiyan (the other defendant in the case)—developed a contentious relationship, the resolution of which Dixon alleges ultimately led to his termination. Each accused the other of unacceptable conduct. Dixon filed a complaint with TCC alleging that Bhuiyan had engaged in disruptive classroom conduct. He gave the student an incomplete grade and asked that TCC's administration require Bhuiyan apologize to him as a condition to receiving a grade.

¶ 3 The record discloses disputed facts about what next transpired between the parties regarding the Bhuiyan complaint and related grade-dispute. TCC alleges that in mid-August (a couple of weeks before classes were to start) it informed Dixon that, if he wanted to teach in the fall, Bhuiyan must be assigned a grade for the course work which she had completed—regardless of the Bhuiyan complaint's resolution. Dixon disputes he was ever told this. TCC contends that Dixon never resolved the grade dispute. Dixon avers that he gave the appropriate TCC office the full grade sheet reflecting all of the grades earned by Bhuiyan, including her final grade for the class and that his handling of the grade dispute complied in all respects with the procedure set out in the Adjunct Professor's Handbook.

¶ 4 The Friday before fall 1995 classes were to begin appellant's employment with TCC was terminated. Appellant alleges that because he was contracted to teach several courses for the fall 1995 semester and was not an employee-at-will, he could only be discharged with good cause. TCC asserts that *either* party could—*for any reason*—terminate the contract to teach at any time before the first class of a semester was taught.

¶ 5 TCC and Dixon agree that when Dixon was contracted to teach, it was on a semester-to-semester basis. For each semester a written contract between the parties was executed near the beginning of the term.[1] Both parties also agree that (1) Dixon's employment each semester was specifically made subject to approval by the TCC Board of Regents and (2) while Dixon had executed a written employment contract with TCC for the spring 1995 semester, one for the fall semester had not been executed. Both acknowledge that their written contract *always* contained the following provision:

1. The parties acknowledge that the written employment contract for each semester was not executed until after classes had begun.

1. Classes will be offered only if enrollment justifies a class. *It is agreed that this agreement may be cancelled by the Administration or the instructor at anytime before the first class session.* [Emphasis added.]

¶ 6 The trial court gave summary judgment to TCC and Dixon appealed. The Court of Civil Appeals upheld the district court's judgment but upon different grounds. Appellant then sought certiorari which was granted.

## II

### STANDARD OF REVIEW

¶ 7 Summary process allows for the isolation and identification of non-triable fact issues; i.e., promotes the search for undisputed material facts which can be applied in the judicial decision-making process.[2] When reviewing summary judgment, the Court focuses on (1) whether the *evidentiary materials as a whole* demonstrate undisputed facts on material issues and (2) whether they support but a *single* inference in favor of the moving party.[3] Only when the evidentiary materials eliminate all *factual* disputes relative to a question of law is summary judgment appropriate on that issue.[4] Hence, our review of a grant of summary judgment is de novo.

## III

### DIXON'S EMPLOYMENT RELATIONSHIP WITH TCC WAS IMPLIEDLY CONTRACTUAL AND NOT THAT OF AN EMPLOYEE–AT–WILL

¶ 8 The trial court based TCC's summary judgment upon its conclusion that Dixon was an employee-at-will. It reasoned that since employers can discharge at-will employees [with but few exceptions[5] ] without recourse,[6]

2. *Hulett v. First Nat'l Bank & Trust Co.*, 1998 OK 21, 956 P.2d 879, 881.

3. *Meadows v. Fain*, 1989 OK 100, 776 P.2d 1270, 1272.

4. *Russell v. Bd. of County Commrs.*, 1997 OK 80, 952 P.2d 492, 496–97.

5. *See Burk v. K–Mart*, 1989 OK 22, 770 P.2d 24.

6. *Gilmore v. Enogex, Inc.*, 1994 OK 76, 878 P.2d 360, 362; *Hinson v. Cameron*, 1987 OK 49, 742 P.2d 549,.

TCC was entitled to summary judgment on Dixon's wrongful-termination claim. The district court's rationale is flawed. The entire employment history between Dixon and TCC reflects that in each instance appellant was hired *one semester* at a time.[7] Oklahoma's extant jurisprudence defines an employee-at-will as one who is hired for a period of *indefinite duration.*[8] Because each episode of Dixon's employment with TCC was fixed, i.e., temporally defined, appellant was not an employee-at-will.

¶9 When possible an appellate court must hand down that judgment, which in its opinion, the trial court should have rendered. If the trial court reaches the correct result but for the wrong reason, its judgment is not subject to reversal.[9] Rather the Court is not bound by the trial court's reasoning and may affirm the judgment below on a different legal rationale.[10] We affirm the trial court's grant of summary judgment to the college but do so on the basis that the employment relationship between Dixon and TCC for the fall–1995 semester is impliedly contractual[11] and not employment-at-will. Dixon's implied employment contract gave either party the right to terminate their contract *for any reason* before the first class of the fall semester was taught.

¶10 When determining whether an implied contract exists, the Court will consider (a) the parties' acts, conduct and statements as a whole, (b) whether there was a meeting of the minds on the agreement's essential elements, (c) the parties' intent to enter into a contract upon defined terms, and (d) whether one of the parties has relied in good faith upon the alleged contract.[12] While making its assessment, the Court is mindful of the legal principle that the law will not make for a party a better contract than it made itself or alter an agreement for one party's benefit and another's detriment.[13] Lastly, we are also cognizant of the rule that an implied contract encompasses all provisions—discernible from the circumstances under which the agreement was reached—which are indispensable to effectuate the parties' intentions.[14]

¶11 What distinguishes an implied contract from an express contract is the mode of its proof. The former is deduced from disclosed circumstances as well as the parties' relations and its terms reflect the agreement which in fairness ought to have been made.[15] The latter is evidenced by direct evidence of an actual agreement.[16]

¶12 The record discloses that toward the end of the 1995 spring-semester Dixon was informed of the schedule of classes he would teach in the fall. TCC tacitly admitted that Dixon was contracted to teach the fall semester when it required him to clear up the Bhuiyan grade-dispute as a condition to continuing as an adjunct professor. In fact there would have been no need to terminate Dixon's employment if he had not been hired in the first place to teach in the fall. While the existence or non-existence of an implied contract is a factually

7. Even Dixon's petition seeks damages by way of lost earnings for only one semester.

8. *Hayes v. Eateries, Inc.*, 1995 OK 108, 905 P.2d 778, 781; *Singh v. Cities Service Oil Co.*, 1976 OK 123, 554 P.2d 1367, 1368; *Foster v. Atlas Life Ins. Co*, 1931 OK 617, 6 P.2d 805, 808.

9. *In the Matter of the Estate of Bartlett*, 1984 OK 9, 680 P.2d 369, 374.

10. *McMinn v. City of Oklahoma City*, 1997 OK 154, 952 P.2d 517, 521.

11. See the provisions of 15 O.S.1991 131, 132 and 133, which respectively provide:

'A contract is either express or implied.' 'An express contract is one, the terms of which are stated in words.' 'An implied contract is one, the existence of which is manifested by conduct.'
*See also Jones v. Univ. of Central Okla.*, 1995 OK 138, 910 P.2d 987, 989.

12. *Queen Anne Candy Co. v. Eagle*, 1939 OK 177, 88 P.2d 630, 631–32.

13. *King–Stevenson Gas & Oil Co. v. Texam Oil Corp.*, 1970 OK 45, 466 P.2d 950, syl. 3.; *Cities Service Oil Co. v. Geolograph Co., Inc.*, 1953 OK 69, 208 Okla. 179, 254 P.2d 775, 782.

14. *Miller v. Independent School Dist. No. 56 of Garfield County*, 1980 OK 19, 609 P.2d 756, 758.

15. *Wattie Wolfe Co. v. Superior Contractors, Inc.*, 1966 OK 133, 417 P.2d 302, 308.

16. *Id.*

892

intensive question, the parties' acts, conduct and statements as a whole evidence a meeting of the minds on the subject of Dixon teaching courses in the fall semester upon terms comparable to those reflected in his earlier written agreements with TCC.

¶ 13 Inherent in the Court's holding that an implied employment contract exists between TCC and Dixon is the ascertainment of its terms and conditions. When, as here, the Court is reviewing a grant of summary judgment, only those contractual terms which are *not* factually disputed can serve as a basis for the judgment below. Dixon does not dispute that every contract which he executed with TCC gave either party the right to cancel the contract for any reason before the first class of a semester were taught. There is no rationale offered nor can any be implied from the record that Dixon's hiring for the 1995 fall semester would have been on a different basis. Dixon reasons that the right-to-cancel provision—traditionally a part of his negotiated employment contract with TCC—was void since a written contract containing the clause was never presented to him for execution until after a semester's first class had been taught. Dixon's argument is not well taken. TCC's offer of employment for each semester was always predicated in part upon and included a right-to-cancel provision which could be exercised by either party (for any reason) before a semester's classes began. The trial court should have found as a matter of law that this clause was a part of the implied contractual relationship between TCC and Dixon.

¶ 14 Consistent with the right-to-cancel provision of their implied employment-contract TCC could and did discharge Dixon. It is not necessary to decide what effect, if any, the Bhuiyan-grade dispute or Adjunct Professor's Manual had upon the challenged termination. The contract between the parties allows either to cancel the agreement *for any reason* before the first class of a semester is taught. To restrict either party's negotiated right to cancel by requiring that it could only be exercised in good faith would be tantamount to recrafting Dixon's contract with TCC to give the appellant an advantage which had not been bargained for originally.

This the Court cannot do. As a matter of law TCC's discharge of Dixon comports with its negotiated contractual right to cancel the employment-contract before a specified event occurred, i.e. before Dixon taught the fall semester's first class. Hence, the trial court's grant of summary judgment is proper.

IV

CONCLUSION

¶ 15 Today's pronouncement affirms the trial court's grant of summary judgment to TCC but for reasons different from those articulated below. Dixon was not an employee-at-will but rather was a party to an implied employment-contract between himself and TCC for the 1995 fall-semester. Since it is undisputed that each earlier semester's contract allowed either party to cancel without cause their agreement before a semester's first class was taught, the same provision is implied into their contractual relationship for the term in issue. TCC's discharge of Dixon is consistent with its contractual rights.

¶ 16 Upon certiorari earlier granted, THE COURT OF CIVIL APPEALS' OPINION IS VACATED AND THE DISTRICT COURT'S JUDGMENT IS AFFIRMED.

¶ 17 HARGRAVE, V.C.J., LAVENDER, KAUGER, WATT, JJ., and LILE, S.J., sitting in lieu of BOUDREAU, J., who is disqualified, concur.

¶ 18 OPALA, J., concurs in judgment.

¶ 19 SUMMERS, C.J., HODGES and WINCHESTER, JJ., concur in result.