2010 OK 9

Cruz **MORALES**, as Mother and Next Friend of Alma Morales, a Minor, Plaintiff/Appellant,

v.

The **CITY OF OKLAHOMA CITY**, a Political Subdivision of the State of Oklahoma, ex rel. the **OKLAHOMA CITY POLICE DEPARTMENT**, a Department of the City of Oklahoma City, Defendant/Appellee.

No. 105,552.

Supreme Court of Oklahoma.

Feb. 9, 2010.

Travis W. Watkins, Mulinix Ogden Hall Andrews & Ludlam, PLLC, Oklahoma City, OK, for Plaintiff/Appellant.

Kenneth Jordan, Municipal Counselor, Richard C. Smith, Litigation Division Head, and Paula A. Kelly, Assistant Municipal Counselor, Oklahoma City, OK, Attorneys for Defendant/Appellee.[2]

2. Identified herein are only those counsel for the parties who have entered an appearance in this

OPALA, J.

¶1 The dispositive issue tendered on appeal is whether the trial court erred in giving summary judgment to City. We answer in the affirmative.

I

**THE ANATOMY OF LITIGATION**

¶2 On 21 September 2005, Oklahoma City police officer Mitchell McCoy was on duty at Roosevelt Middle School when a fight broke out in the school's cafeteria between twelve-year-old Alma Morales ("Alma") and another female student. Officer McCoy stepped in to assist two teachers in breaking up the fight. After removing Alma from the proximity of the other student and restraining her, Officer McCoy placed her under arrest. At some point during the incident, Alma's left wrist was broken and her left elbow injured.

¶3 Plaintiff, Alma's mother, presented a written notice of claim for Alma's injuries to the City of Oklahoma City relying on the Governmental Tort Claims Act ("GTCA").[3] Because the claim was not approved within ninety days after it was filed, it was deemed denied under the terms of § 157(A) of the GTCA.[4] Plaintiff then brought in the District Court in Oklahoma County a personal injury action against City on Alma's behalf.

¶4 In her initial petition plaintiff alleged that Officer McCoy, acting within the scope of his employment, used excessive force, acted negligently, intentionally, maliciously, and in reckless disregard of her daughter's safety. City responded with a motion to dismiss on the grounds that the allegations of intentional, malicious, and reckless conduct on their face took Officer McCoy's conduct outside the scope of his employment, thereby relieving City of any liability for his actions.[5] Plaintiff then amended her petition, removing all descriptive allegations of Officer McCoy's conduct and replacing them with a non-specific allegation of tort-inflicted damage to Alma caused by Officer McCoy's actions taken within the scope of his employment. City admits that Officer McCoy was acting within the scope of his employment during the incident, but denies both that his conduct was tortious and that his actions caused Alma's injuries.

¶5 City moved for summary judgment, arguing that (1) the undisputed material facts of record support no other conclusion than that Officer McCoy's use of force to restrain and arrest Alma was objectively reasonable and hence statutorily privileged; and (2) even if Officer McCoy's conduct caused Alma delictual harm, City is immune from liability for his conduct under three of the statutory exemptions from governmental tort accountability created by the GTCA.[6] The trial court

cause (as required by Okla. Sup.Ct. Rule 1.5(a), 12 O.S.2001, Ch. 15, App.1) and whose names appear on the appellate paperwork.

3. The pertinent provisions of 51 O.S. Supp.2003 § 156 state:
A. Any person having a claim against the state or a political subdivision within the scope of Section 151 et seq. of this title shall present a claim to the state or political subdivision for any appropriate relief including the award of money damages.
B. Except as provided in subsection H of this section, claims against the state or a political subdivision are to be presented within one (1) year of the date the loss occurs. A claim against the state or a political subdivision shall be forever barred unless notice thereof is presented within one (1) year after the loss occurs.

4. The pertinent provisions of 51 O.S.2001 § 157(A) deem a claim to be denied if the governmental agency fails to approve it in its entirety within ninety days.

5. Under the GTCA, City cannot be held liable for acts or omissions of its employees acting outside the scope of their employment. *Speight v. Presley*, 2008 OK 99, ¶11, 203 P.3d 173, 176.

6. The provisions of 51 O.S. Supp.2004 § 155, in force when this cause of action accrued, set forth thirty-three exemptions from liability for governmental agencies. The pertinent provisions state:
"The state or a political subdivision shall not be liable if a loss or claim results from:

\* \* \* \* \* \*

4. Adoption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy;

\* \* \* \* \* \*

6. Civil disobedience, riot, insurrection or rebellion or the failure to provide, or the method

agreed that City was immune from liability under one of the three exemptions, 51 O.S. Supp.2004 § 155(4),[7] and gave judgment to City. Plaintiff appealed. Upon City's motion, the appeal was retained by this court. We now reverse the judgment and remand the cause for further proceedings to be consistent with this opinion.

## II

### STANDARD OF REVIEW

¶ 6 Summary process—a special pretrial procedural track pursued with the aid of acceptable probative substitutes [8]—is a search for undisputed material facts which, without resort to forensic combat, may be utilized in the judicial decision-making process.[9] The moving party stands entitled to judgment as a matter of law when neither genuine issues of material fact nor conflicting inferences that may be drawn from uncontested facts are in dispute and the law favors the moving party's claim or liability-defeating defense.[10] Only those evidentiary materials which eliminate from trial some or all fact issues on the merits of the claim or of the defense afford legitimate support for a trial court's use of summary process for a claim's adjudication.[11]

¶ 7 The purpose of summary process is not to deprive parties of their right to have the disputed facts of the case tried by a jury, but rather to decide the legal sufficiency of the evidentiary materials presented to determine whether a triable case is tendered.[12] *The use of summary process may not be extended to swallow triable issues of fact.*[13] Inclusion of the latter within that process would violate a party's fundamental right either to a trial by jury at common law or due process by orderly trial before a court in equity.[14] The scalpel of summary judgment may be wielded to terminate litigation only when, as a matter of law, no material facts offered by the parties are in discord.

of providing, police, law enforcement or fire protection;

 * * * * * *

16. Any claim which is limited or barred by any other law; ..."
The statute was amended in 2009 to provide thirty-five exceptions, 2009 Okla. Sess. Laws, ch. 98, § 12, eff. Nov. 1, 2009.

7. *See id.*

8. " 'Acceptable probative substitutes' are those which may be used as 'evidentiary materials' in the summary process of adjudication." *Jackson v. Okla. Mem'l Hosp.*, 1995 OK 112, ¶ 15, n. 35, 909 P.2d 765, 773, n. 35. See also *Seitsinger v. Dockum Pontiac, Inc.*, 1995 OK 29, ¶¶ 16–17, 894 P.2d 1077, 1080–81; *Davis v. Leitner*, 1989 OK 146, ¶ 15, 782 P.2d 924, 927.

9. The focus in summary process is not on the facts which might be proven at trial, but rather on whether the evidentiary material in the record tendered in support of summary disposition reveals only undisputed material facts supporting but a single inference that favors the movant's quest for relief. *Polymer Fabricating, Inc. v. Employers Workers' Comp. Ass'n*, 1998 OK 113, ¶ 8, 980 P.2d 109, 113; *Hulsey v. Mid–America Preferred Ins. Co.*, 1989 OK 107, ¶ 8, n. 15, 777 P.2d 932, 936, n. 15.

10. In determining the appropriateness of summary relief the court may consider, in addition to the pleadings, items such as depositions, affidavits, admissions, and answers to interrogatories, as well as other evidentiary materials which are offered in acceptable form without objection from other parties or are admitted over the challenging exception. *Polymer Fabricating, Inc. v. Employers Workers' Comp. Ass'n, supra,* note 9, at ¶ 8, at 113. See also *Seitsinger v. Dockum Pontiac, Inc., supra,* note 8, at ¶¶ 16–17, at 1080–81.

11. *Russell v. Bd. of County Comm'rs,* 1997 OK 80, ¶ 7, 952 P.2d 492, 497. See also *Gray v. Holman,* 1995 OK 118, ¶ 11, 909 P.2d 776, 781.

12. See *State ex rel. Fent v. State ex rel. Okla. Water Res. Bd.,* 2003 OK 29, ¶ 14, n. 31, 66 P.3d 432, 440, n. 31; *Bowers v. Wimberly,* 1997 OK 24, ¶ 18, 933 P.2d 312, 316; *Stuckey v. Young Exploration Co.,* 1978 OK 128, ¶ 15, 586 P.2d 726, 730. *In re Peterson,* 253 U.S. 300, 310, 40 S.Ct. 543, 546, 64 L.Ed. 919 (1920) ("No one is entitled in a civil case to trial by jury, unless and except so far as there are issues of fact to be determined.").

13. *Bowman v. Presley,* 2009 OK 48, ¶ 32, 212 P.3d 1210, 1222–23. See also Art. 2, § 19 and Art. 2, § 7, Okla. Const. See also Arthur R. Miller, The Ascent of Summary Judgment and Its Consequences for State Courts and State Law (paper delivered at Pound Civil Justice Institute 2008 Forum for State Appellate Court Judges) (cautioning against the erosion of a party's fundamental right to jury trial and due process rights through the overuse of summary process in the pursuit of "efficiency").

14. *Bowman, supra,* note 13; Miller, *supra,* note 13; Art. 2, § 19 and Art. 2, § 7, Okla. Const.

¶ 8 Issues in summary process stand before us for *de novo* review.[15] All facts and inferences in a summary proceeding must be viewed in the light most favorable to the non-movant.[16] Just as trial courts must decide in the first instance whether summary judgment is proper, so too must appellate courts undertake an independent and non-deferential *de novo* review when testing the legal sufficiency of all evidentiary materials proffered by the parties in their quest for or in their defense against summary relief.[17] If no material fact or inference derived from the evidentiary materials stands in dispute and if the law favors the moving party's claim or liability-defeating defense, summary judgment is the latter party's due.

¶ 9 Although the trial court gave City summary judgment solely because of the exemption from liability provided to governmental employers by the provisions of 51 O.S. Supp.2004 § 155(4), City is now free to defend its judgment on any ground pressed below but left unresolved by the trial tribunal. When a trial court reaches the correct result for the wrong reason, its judgment is not subject to reversal.[18]

## III

## SUMMARY RELIEF IS NOT CITY'S DUE BASED ON ITS STATUTORY EXEMPTION DEFENSES

¶ 10 Relying on three exemptions from the general rule of governmental tort accountability provided by the GTCA, City argues it cannot be held liable for Officer McCoy's actions even if they could be considered negligent. The trial court gave judgment to City on the basis of the exemption provided by § 155(4) of the GTCA, the pertinent portion of which shields a municipality from liability if a loss or claim arises from the enforcement of a law.[19] City urges this court to affirm the judgment on that basis or, alternatively, on the basis of either or both of the other two GTCA provisions City urged below but which were left unaddressed and uninvoked by the trial court's decision.[20] We conclude in this case that none of the three provisions cited may shield City from liability.

### A. The Exemption from Liability Provided by GTCA § 155(4).

¶ 11 The provisions of § 155(4) of the GTCA state that a political subdivision shall not be liable for a loss or claim that results from:

4. Adoption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy;

. . .

City argues that even if Officer McCoy was negligent and injured Alma, it [City] cannot be held liable because the injuries occurred while Officer McCoy was enforcing a law. In essence, City poses for our adoption a construction of § 155(4) that would provide a blanket immunity to a municipality for claims arising from law enforcement. We recently rejected just such an argument by City in *Tuffy's Inc. v. City of Oklahoma City*,[21] in which we said,

15. An order granting summary relief, in whole or in part, disposes solely of questions of law reviewable by a *de novo* standard. *Brown v. Nicholson*, 1997 OK 32, ¶ 5, 935 P.2d 319, 321. "Issues of law are reviewable by a de novo standard and an appellate court claims for itself plenary independent and non-deferential authority to reexamine a trial court's legal rulings." *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084 (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991)).

16. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053.

17. *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, ¶ 10, 743 P.2d 682, 685 (*approved for publication* by the Okla. Supreme Court).

18. *Jacobs Ranch, L.L.C. v. Smith*, 2006 OK 34, ¶ 58, 148 P.3d 842, 857; *Dixon v. Bhuiyan*, 2000 OK 56, ¶ 9, 10 P.3d 888, 891; *McMinn v. City of Okla. City*, 1997 OK 154, ¶ 11, 952 P.2d 517, 521; *In the Matter of the Estate of Bartlett*, 1984 OK 9, ¶ 4, 680 P.2d 369, 374.

19. *See supra* note 6.

20. *Id.*

21. 2009 OK 4, 212 P.3d 1158.

"To construe § 155(4) as providing blanket immunity to political subdivisions for any claim arising from law enforcement would not conform to established precedent. We have consistently held that a municipality is liable for the tortious acts of police officers committed within the scope of employment as defined by the GTCA."[22]

¶ 12 The purpose of § 155(4) is to protect the discretionary acts of law enforcement officers in deciding whether a given situation calls for enforcing a law or not. That choice, whichever way it goes, may result in a detriment visited upon either the person with whom the officer is engaged or upon a third person.[23] It is the exercise of that discretion which is protected by this exemption. **Once an officer makes the decision to enforce a law by making an arrest, he or she must do so in a lawful manner.** If a tort is committed in the process of making an arrest, § 155(4) does not provide immunity from suit to the officer's governmental employer for the resulting damages.

¶ 13 Whether a governmental agency is ultimately liable depends, of course, on whether its police officer employee committed the tort of which he or she is accused. Unless the infliction of delictual harm is determinable as a matter of law, governmental liability or exoneration for loss caused by the manner of effecting arrest must await a jury's resolution. In short, we reject City's contention that in enacting § 155(4) the Legislature intended to provide municipalities with *a priori* immunity where a plaintiff seeks recovery for allegedly *tortious* acts of law enforcement personnel in the use of force to effect an arrest.

### B. The Exemption from Liability Provided by GTCA § 155(6).

¶ 14 The provisions of § 155(6) of the GTCA state in pertinent part that a political subdivision shall not be liable for a loss or claim that results from "the method of providing, police, law enforcement or fire protection; . . ." In *Salazar v. City of Oklahoma City*,[24] we held that protection is the key word in construing § 155(6).[25]

"The exemption in that subsection is invocable when the tort arises while a municipality is rendering services that fall into some category of police protection, law enforcement protection or fire protection. In short, a governmental subdivision is not liable for deficiency of protective services extended by its police, law enforcement or fire fighting components."[26]

City argues that Officer McCoy was providing protective services to Alma as well as engaging in a law enforcement activity when he subdued and arrested her.

¶ 15 To accept City's characterization of Officer McCoy's conduct would do away with the distinction between protective services by police and law enforcement activities. Officer McCoy testified in his deposition that the first thing he saw when he turned toward the fight was Alma hitting the other student in the back as that student was walking away. He said he grabbed Alma because she would not stop fighting. From Officer McCoy's viewpoint, it is clear that his role in breaking up the fight and arresting Alma was that of a law enforcer. Nothing in the record suggests that Alma was seeking protection from Officer McCoy. She did not summon him to protect her. The court in *Salazar* specifically characterized the act of making an arrest as a law enforcement function.[27] **Plaintiff's claim is for the negligent performance of that function, not for a deficiency in providing protective services.** The provisions of § 155(6) do not apply to Officer McCoy's conduct in suit.

---

22. *Id.* at ¶ 20, at 1167.

23. The lawfulness of a law enforcement operation does not preclude loss to the person or persons at whom the operation is directed or to others. *See, e.g., Williams v. City of Warr Acres,* 1985 OK 11, 695 P.2d 519, (decided under the Political Subdivision Tort Claims Act, 51 O.S. 1981 § 151 *et seq.*).

24. 1999 OK 20, 976 P.2d 1056.

25. *Id.* at ¶ 26, at 1066.

26. *Id.*

27. *Id.* at ¶ 27, at 1066.

## C. The Exemption Provided by GTCA § 155(16).

¶ 16 The provisions of § 155(16) of the GTCA state that a political subdivision shall not be liable for a loss or claim that results from "any claim which is limited or barred by any other law; . . ." City argues that plaintiff's claim is limited or barred by the provisions of 21 O.S.2001 § 643, thereby exempting City from liability.

¶ 17 The relevant provisions of § 643 are: "To use or to attempt to offer to use force or violence upon or toward the person of another is not unlawful in the following cases:

1. When necessarily committed by a public officer in the performance of any legal duty, or by any other person assisting such officer or acting by such officer's direction;

2. When necessarily committed by any person in arresting one who has committed any felony, and delivering such person to a public officer competent to receive such person in custody;

\* \* \* \* \*

4. When committed by a parent or the authorized agent of any parent, or by any guardian, master or teacher, in the exercise of a lawful authority to restrain or correct such person's child, ward, apprentice or scholar, provided restraint or correction has been rendered necessary by the misconduct of such child, ward, apprentice or scholar, or by the child's refusal to obey the lawful command of such parent or authorized agent or guardian, master or teacher, and the force or violence used is reasonable in manner and moderate in degree; . . ."

City argues that all three of the above-quoted subdivisions of § 643 apply to the incident at issue. Because these provisions would provide Officer McCoy with a defense to criminal liability for his conduct, City would have us hold that they also constitute a law that limits or bars a civil claim against Officer McCoy, thereby destroying the foundation of plaintiff's claim against City, which requires a claim against the governmental employee-actor that is neither barred nor limited by any other law. Plaintiff counters that the terms of § 643 provide a defense to a criminal charge, not to a negligence claim, and hence do not affect City's liability for Officer McCoy's conduct in suit.

¶ 18 We reject City's argument that § 643, in conjunction with § 155(16), renders City immune from suit. To hold otherwise would mean the Legislature intended to immunize a governmental agency from suit *ab initio* simply because a law arguably creates an affirmative defense to liability invocable by the agency's employee.[28] Instead, we interpret § 155(16) to bar suit against a governmental employer only if, and to the extent that, a law outside the GTCA would prevent a suit from being brought against the employee-tortfeasor. Just as in the case of private-entity *respondeat superior*, the liability of a governmental employer is derivative and dependent upon the employee's liability, assuming no independent or concurrent tortious act on the part of the employer. The provisions of § 155(16) ensure that a governmental employer has the same defenses to and limitations on liability as would be available to a private employer under similar circumstances. Thus, for example, if the law does not recognize a claim against the employee, if the employee has immunity from suit under a statute other than the GTCA or under the common law, or if a law limits the amount of damages assessable against the employee, the terms of § 155(16) should ordinarily extend those laws' benefits to the governmental employer.

¶ 19 Neither the provisions of § 643 nor any other statute or common law norm (other than the GTCA itself) prevents plaintiff from bringing a negligence action against Officer McCoy.[29] A police officer's privilege

---

28. We have held that the provisions of § 643 afford a defense to a civil claim for assault and battery, *Boston v. Muncy,* 1951 OK 175, ¶ 10, 233 P.2d 300, 302, but we have never applied its terms to a negligence claim.

29. The GTCA bars separate suit against an agency's employee when the agency stands liable in accordance with the terms of the GTCA. *See,* the provisions of 51 O.S.2001 § 153 B., which state: "The liability of the state or political subdivision under this act shall be exclusive and in place of

to use reasonable force in making an arrest, sometimes conceptualized as providing a qualified immunity, should not be confused with an immunity that bars a suit *ab initio*. The privilege merely provides a defense to liability, the availability of which to City is by virtue of § 155(16) commensurate with its availability to Officer McCoy. City is clearly not entitled to judgment of exoneration based on § 155(16).

## IV

## THE EXISTENCE OF TRIABLE ISSUES OF FACT PRECLUDE THE USE OF SUMMARY PROCESS TO TERMINATE THIS LITIGATION

¶ 20 City also argues that it is entitled to judgment as a matter of law because the evidentiary materials tendered below present no triable issues of fact. City contends the evidentiary materials support no other conclusion than that Officer McCoy's conduct conformed to the applicable standard of care. **We disagree that the evidentiary materials are legally sufficient to warrant withholding this case from a jury's deliberations.**

¶ 21 The threshold question in any negligence action is whether the defendant owed a duty of care to the plaintiff.[30] While the question of duty is usually presented in terms of the actor's obligation, "the essential question [is] whether the plaintiff's interests are entitled to protection against the defendant's conduct." [31] One of the most important considerations used in determining whether a duty exists is the foreseeability of injury to the plaintiff.[32] A defendant is generally said to owe "a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks that make the conduct unreasonably dangerous." [33] The outer limits beyond which the law will not find a foreseeable risk of harm to a particular plaintiff that entitles him (her) to protection are set by reason and good sense.[34] Because City does not dispute that it owed a duty of care to Alma, we will assume for purposes of this decision, without deciding, that a police officer owes a negligence-based duty of care to an arrestee to protect the arrestee from injury.[35]

¶ 22 The standard of care prescribes how a person must act or not act in order to satisfy the duty of care.[36] The parties disagree on the precise formulation of the standard of care applicable to a police officer

all other liability of the state, a political subdivision or employee at common law or otherwise."

**30.** *Lowery v. Echostar Satellite Corp.*, 2007 OK 38, ¶ 12, 160 P.3d 959, 964, A duty of care is an obligation owed by one person to act so as not to cause harm to another. *Id.* See 76 O.S.2001 § 1.

**31.** *Wofford v. Eastern State Hosp.*, 1990 OK 77, ¶ 10, 795 P.2d 516, 519, *quoting* Prosser, LAW OF TORTS [3d ed. 1964] at 332–333.

**32.** *Iglehart v. Bd. of County Comm'rs of Rogers County*, 2002 OK 76, ¶ 10, 60 P.3d 497, 502. In addition to foreseeability, other factors to be considered in the foreseeability analysis are: (a) degree of certainty of harm to the plaintiff, (b) moral blame attached to defendant's conduct, (c) need to prevent future harm, (d) extent of the burden to the defendant and consequences to the community of imposing the duty on defendant, and (e) availability of insurance for the risk involved. *See Lowery, supra,* note 30 at ¶ 14, n. 4, at 964, n. 4.

**33.** *Iglehart, supra,* note 32; *Wofford, supra,* note 31 at ¶ 11, at 519.

**34.** *Lowery, supra,* note 30 at ¶ 14, at 964; *Rose v. Sapulpa Rural Water Co.*, 1981 OK 85, ¶ 22, 631 P.2d 752, 757.

**35.** Although some jurisdictions reject negligence as a theory of liability for the use of excessive force by law enforcement, *see City of Miami v. Sanders*, 672 So.2d 46 (Fla.App.1996); *Cameron County v. Ortega*, 291 S.W.3d 495 (Tex.App. 2009); *Love v. City of Port Clinton*, 37 Ohio St.3d 98, 524 N.E.2d 166 (1988); *District of Columbia v. Chinn*, 839 A.2d 701 (D.C.App.2003), there is no necessity in this case for us to choose between delictual theories. If the privilege to use reasonable force to effect an arrest was exceeded by Officer McCoy, it matters not what nomenclature is assigned to the plaintiff's claim.

**36.** *Lowery, supra,* note 30 at ¶ 12, n. 3, at 964, n. 3 (explaining that the provisions of 76 O.S.2001 § 1 impose a non-contractual legal duty upon every person to refrain from injuring the person or property of another and that how a person satisfies this duty to avoid injury to another constitutes the standard of care).

making an arrest. That standard of care which is owed by a law enforcement officer in civil law to a suspect incident to arrest presents a question of first impression for this court.[37]

¶ 23 We begin by noting the obvious: a police officer does not stand in the same shoes as an ordinary citizen when it comes to using force against another person which exposes that person to a risk of injury. This much stands clearly recognized in the state's criminal law. In making a lawful arrest, a police officer in Oklahoma is statutorily relieved of *criminal liability* for *assault and battery* as long as the act of force is "necessarily committed by the officer in the performance of a legal duty." [38] At the same time, an officer is "subject to the criminal laws of this state to the same degree as any other citizen" if *excessive force* is used.[39] Excessive force is statutorily defined as "physical force which exceeds the degree of physical force permitted by law or the policies and guidelines of the law enforcement entity." [40]

¶ 24 The legislature has directed the state's police departments to adopt policies and guidelines that outline the outer limit of permissible use of force.[41] The Oklahoma City Police Department has adopted such policies, which are set out in its Operations Manual. The Manual instructs officers to use only such force as is "reasonable and necessary" under the circumstances, including such force as is "reasonably necessary" to effect a lawful arrest and prevent the escape of a person lawfully arrested.[42] The Manual defines "reasonably necessary" force as force used when "all other reasonable means to accomplish the desired action have been exhausted or would clearly be ineffective under the circumstances." [43] The Manual also provides that *constitutional* violations by its officers in using force are to be assessed under a standard of "objective reasonableness." [44] Although the Manual acknowledges that police officers are subject to the civil-law consequences of using *excessive force*, nothing in the Manual addresses the application of negligence principles to the force used during an arrest.

¶ 25 The traditional centuries-old common-law rule recognized in Oklahoma holds that whenever one person is by circumstances placed in such a position with regard to another, that, if he (she) did not use ordinary care and skill in his (her) own conduct, he (she) would cause danger of injury to the

37. Although we have previously decided cases in which the underlying claim was one for police negligence incident to arrest, the precise issues raised in those cases have always been tangential to the elements of the tort itself. Hence, we have never addressed the applicable standard of care for police officers making an arrest. *See e.g., Nail v. City of Henryetta,* 1996 OK 12, 911 P.2d 914 (holding that it was for the jury to decide whether police officer was acting within the scope of his employment when he shoved an intoxicated fifteen-year-old person who had already been arrested, was handcuffed, and was not resisting the officer); *Tuffy's Inc. v. City of Okla. City,* 2009 OK 4, 212 P.3d 1158 (holding that tortious acts of police officers may fall within the scope of their employment for purposes of holding their municipal employers liable under the GTCA).

38. *See* the provisions of 21 O.S.2001 § 643, which state in pertinent part:
"To use or to attempt to offer to use force or violence upon or toward the person of another is not unlawful in the following cases: 1. When necessarily committed by a public officer in the performance of any legal duty...."

39. *See* the provisions of 22 O.S.2001 § 34.1, which state in pertinent part:

"A. Any peace officer, as defined in Section 648 of Title 21 of the Oklahoma Statutes, who uses excessive force in pursuance of such officer's law enforcement duties shall be subject to the criminal laws of this state to the same degree as any other citizen."

40. *Id.* ("B. As used in this act, [citation omitted] 'excessive force' means physical force which exceeds the degree of physical force permitted by law or the policies and guidelines of the law enforcement entity.").

41. *Id.* ("C. Each law enforcement entity which employs any peace officer shall adopt policies or guidelines concerning the use of force by peace officers which shall be complied with by peace officers in carrying out the duties of such officers within the jurisdiction of the law enforcement entity.").

42. OCPD Police Operations Manual, § 554.20.

43. *Id.* at § 554.10.

44. *Id.* at § 554.20.

person or property of another, a duty arises to use ordinary care and skill to avoid such danger.[45] This basic formulation of the standard of care is not directly applicable to a police officer making an arrest where exposure of the suspect to injury is an inherent part of the activity. All arrests involve the use of some form of restraint, interference with the arrestee's liberty and the exercise of custodial control over another person. Each of these actions poses some risk of harm to the arrestee. Even when an arrest is accomplished with minimal force, an offensive contact takes place. **If police officers were exposed to suit every time the risk of harm inherent in an arrest culminated in actual harm, law enforcement would grind to a halt.** The standard of care must hence recognize that the use of force and a concomitant risk of injury are inherent in the performance of a law enforcement officer's duty to arrest those suspected of breaking the law. Ordinary citizens have no comparable leeway in their duty to avoid injury to others.

¶ 26 We therefore hold that a police officer has a special dispensation from the duty of ordinary care not. to endanger others. **A police officer's duty is very specific: it is to use only such force in making an arrest as a reasonably prudent police officer** would use in light of the objective circumstances confronting the officer at the time of the arrest. In applying this standard, an officer's subjective mistake of fact or law is irrelevant, including whether he (she) is acting in good faith or bad.[46] The question is whether the objective facts support the degree of force employed.[47]

■ ¶ 27 Among the factors that may be considered in evaluating the objective reasonableness of an officer's use of force in making an arrest are: (1) the severity of the crime of which the arrestee is suspected; (2) whether the suspect poses an immediate threat to the safety of the officers or others, (3) whether the suspect is actively resisting arrest or attempting to evade arrest; (4) the known character of the arrestee; (5) the existence of alternative methods of accomplishing the arrest; (6) the physical size, strength and weaponry of the officers compared to those of the suspect; and (7) the exigency of the moment.[48]

¶ 28 City argues that the objective reasonableness standard applicable to police use of force creates a fixed standard of care that may be applied by the court without a jury.[49] A fixed standard of care is one that is firmly and precisely defined by law.[50] A variable

45. *Iglehart, supra,* note 32 at ¶ 10, at 502.

46. *See Virginia Elec. and Power Co. v. Dungee,* 258 Va. 235, 520 S.E.2d 164, 174 (1999) ("The difference between an objective and subjective test, in the context of negligence, is that, in an objective test, the actor's conduct is measured against what a reasonable person would do in similar circumstances, regardless of that particular actor's individual feelings, thoughts, perceptions, or prejudices. In a subjective test, by contrast, the actor's actual knowledge and perception is the ultimate issue.").

47. The objective reasonableness test to assess adherence to the standard of care set out in today's pronouncement is like that employed by the United States Supreme Court in § 1983 civil rights claims of excessive force, but the ultimate inquiries differ. In a constitutional tort, the objective reasonableness inquiry is designed to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Scott v. Harris,* 550 U.S. 372, 383, 127 S.Ct. 1769, 1778, 167 L.Ed.2d 686 (2007). Striking a balance between an individual's constitutional rights and countervailing governmental interests is not a

consideration in a negligence action where the question is simply whether the applicable standard of care has been met or not.

48. The first three factors are those enumerated by the United States Supreme Court for application of the objective reasonableness test to claims of excessive force in violation of the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). The remaining four factors were identified by the Louisiana Supreme Court in *Kyle v. City of New Orleans,* 353 So.2d 969, 973 (La. 1977). While no list can exhaust the possible considerations in a totality-of-the-circumstances evaluation, the factors suggested in the text are fairly illustrative of those that should be considered in assessing what a reasonable police officer would do under the circumstances.

49. *Salazar v. City of Okla. City,* 1999 OK 20, ¶ 20, 976 P.2d 1056, 1064 (stating that where a fixed standard is employed, the court may be warranted in taking the case from the jury).

50. *Id.* For example, traffic laws, including statutes, regulations, and local ordinances, often set a fixed standard for the conduct of a reasonable

standard is one that shifts with the circumstances.[51] Plaintiff's negligence claim in this case rests on the allegation of a breached obligation that is to be measured by a standard that has no fixed dimensions but shifts with the circumstances.[52] The fact that objective criteria are to be used to assess conformance with that standard does not make the standard fixed.[53] City's reference to federal law on the role of judge and jury in deciding the issue of qualified immunity in federal civil rights actions notwithstanding, where in a negligence action the parameters of duty are undefined as a matter of law and shift with the circumstances, a classic case for jury resolution stands presented.[54]

 ¶ 29 City next argues that summary judgment is its due as a matter of law because reasonable people could not draw different conclusions respecting the question of Officer McCoy's negligence. According to the applicable rule, where the evidence permits of no other conclusion than that a defendant has or has not met the standard of care imposed by law, the court may remove the issue from the jury and decide the question of negligence on its own.[55] **We conclude that in this case triable issues are present and preclude summary judgment.**[56]

¶ 30 It is undisputed that Officer McCoy removed Alma from a fight with another student. He accomplished this by grabbing Alma's neck with his right hand and, with his left hand holding her left hand, leading her about twelve feet to a wall. He then held her up against the wall with his body. Alma testified in her deposition that when Officer McCoy held her against the wall, he placed all of his force into her left side where her

left hand got squished and was broken. Officer McCoy's deposition material tendered for the trial court's consideration does not include any estimation of the amount of force he used, but he repeatedly denied that the force he used would have caused Alma's broken wrist. Alma admits that she kept moving her left hand toward her neck, where Officer McCoy was holding her. Officer McCoy's deposition material contains a reading from his contemporaneous incident report, in which he stated that he perceived Alma's actions at the time as demonstrating her unwillingness to stop fighting. He testified that her actions were not sufficiently extreme to cause him to consider her to be resisting arrest, but she needed to be restrained.

¶ 31 Viewing the evidence as we must in a light most favorable to the party opposing summary judgment,[57] we conclude that a jury could find Officer McCoy used more force than was necessary or reasonable to subdue and arrest Alma. The only evidence in the record describing the amount of force used by Officer McCoy comes from Alma who claims the officer used all of his weight to hold her against a wall. The record shows that Officer McCoy weighed 275 lb. at the time of the incident in question and Alma weighted 110 lb. Whether such force, if used, was reasonably necessary cannot be resolved as a matter of law, given the evidence that Alma may not have been willing to submit to Officer McCoy's authority and was attempting instead to continue the fight. Moreover, the record is devoid of any testimony regarding restraint and arrest tech-

person in operating a vehicle and require a finding of negligence in a tort action if the plaintiff can prove that the defendant committed an unexcused violation of the standard.

51. *Id.*

52. *Id.*

53. *Walters v. J.C. Penney Co., Inc.,* 2003 OK 100, ¶ 13, 82 P.3d 578, 584.

54. *Salazar, supra,* note 49 at ¶ 20, at 1064.

55. *City of Cushing v. Stanley,* 1918 OK 122, ¶ 5, 172 P. 628, 628.

56. The presence of some undisputed facts does not *per se* indicate that the case presents no triable issues. When different inferences may be drawn from uncontroverted facts, the dispute must be submitted for a trier's resolution. *Flanders v. Crane Co.,* 1984 OK 88, ¶ 10, 693 P.2d 602, 605, *citing Northrip v. Montgomery Ward and Co.,* 1974 OK 142, ¶ 11, 529 P.2d 489, 493, and *Flick v. Crouch,* 1967 OK 131, ¶ 17, 434 P.2d 256, 262, *superseded on other grounds* by constitutional amendment as recognized in *Jernigan v. Jernigan,* 2006 OK 22, ¶ 16, n. 16, 138 P.3d 539, 545, n. 16.

57. *Carmichael, supra* note 16.

niques under these circumstances, what alternatives were available to Officer McCoy to subdue Alma, and what the potential dangers might be to a struggling child had he used an alternative technique. Accordingly, we hold that City is not entitled to judgment as a matter of law based on its view that Officer McCoy's conduct should be accepted as objectively reasonable.

## V

### SUMMARY

¶ 32 Plaintiff seeks to recover damages for personal injury to her minor daughter by the alleged negligence of an Oklahoma City police officer in subduing and arresting the child. The existence of disputed material facts and/or inferences that call for resolution by a jury makes summary relief impermissible. **It cannot be determined that as a matter of law Officer McCoy either was or was not negligent in the performance of his duty.** In addition, the immunity defenses tendered by City are unavailable under the circumstances of this case and cannot legally support judgment in City's favor. **Plaintiff is constitutionally entitled to her day in court before a panel of petit jurors sworn to try her case.**

¶ 33 **THE TRIAL COURT'S JUDGMENT IS REVERSED AND THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS TO BE CONSISTENT WITH TODAY'S PRONOUNCEMENT.**

¶ 34 EDMONDSON, C.J., HARGRAVE, OPALA, KAUGER, WATT, and COLBERT, JJ., concur.

¶ 35 TAYLOR, V.C.J., WINCHESTER and REIF, JJ., dissent.