2017 OK CIV APP 17

**Thomas FOX, Plaintiff/Appellant,**

v.

**Tim FOX, Charles A. Dickson, III; and Charles A. Dickson, III PLLC, Defendants/Appellees.**

**Case Number: 113724**

Court of Civil Appeals of Oklahoma, Division No. 4.

Decided: 04/29/2016

Mandate Issued: 03/21/2017

Rehearing Denied September 2, 2016

Ronald A. Schaulat, Louis P. Falsetti, SCHAULAT FALSETTI, PLLC, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Derrick T. DeWitt, Carolyn S. Smith, NELSON TERRY MORTON DEWITT & PARUOLO, Oklahoma City, Oklahoma, for Defendant/Appellee, Tim Fox.

Justin D. Meek, Ryan L. Dean, NELSON TERRY MORTON DEWITT & PARUOLO, Oklahoma City, Oklahoma, for Defendants/Appellees, Charles A. Dickson, III and Charles A. Dickson, III PLLC.

JOHN F. FISCHER, JUDGE:

¶ 1 Thomas Fox appeals the district court's judgment in favor of the defendants in this malicious prosecution case. The appeal has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36, 12 O.S. Supp. 2013, ch. 15, app. 1, and the matter stands submitted without appellate briefing. Because the defendants had probable cause to file the action that Thomas claims was malicious, and because the existence of probable cause is an absolute defense to a malicious prosecution action, we affirm.

## BACKGROUND

¶ 2 The current litigation arises from a family business dispute involving Don Fox and his two sons, Thomas and Tim. Both sons worked for their father's business, Big Giant Warehouse, and Thomas is still employed there. Tim's relationship with his father is strained, at best. Tim left Big Giant in September of 2005 and started a similar business. In August of 2007, Don and Big Giant sued Tim and some of Tim's customers. Don alleged that Tim used confidential information to unfairly compete with Big Giant, breached his fiduciary duty to Big Giant, fraudulently concealed his activities and conspired with charitable organizations to damage Big Giant. In that case, the jury returned a verdict in Don's favor but awarded no damages.

¶ 3 However, during the course of the Big Giant litigation, Tim's brother-in-law was served with a deposition subpoena by Don's lawyers while he was briefly visiting from out of state to attend a family photography session. Tim became suspicious that someone had unlawfully accessed his personal email account because that was the only method of communication Tim and his brother-in-law used to plan the photography session. Tim investigated the matter and learned that unauthorized access to his personal email account had occurred from an IP address assigned to a computer owned by Big Giant

and an IP address assigned to a computer owned by Kevin Micue, a long-time Big Giant employee and one of the two Big Giant employees primarily responsible for Big Giant's computers.

¶4 Tim then deposed Don, Thomas and Micue. Don testified that he had "heard" someone at Big Giant "did something to access Tim Fox's email account" and identified Thomas as one of the three Big Giant employees who might have done so. Thomas testified that he did not access Tim's personal email account but that Big Giant had employed a forensic expert to access Tim's Big Giant email account after Tim left the company. Micue repeatedly invoked his Fifth Amendment privilege against self-incrimination when he was asked whether he or Thomas had accessed Tim's personal email account.

¶5 Tim consulted the Federal Bureau of Investigation. After further investigation, the FBI concluded that one or more persons had violated federal privacy law by unlawfully accessing Tim's personal email account. The FBI referred the matter to the United States Attorney, who declined to pursue the matter. On November 19, 2010, Tim sued Don, Thomas and others in federal court, alleging a violation of federal law and his privacy rights. Don's motion for summary judgment was granted because the court found that there was no evidence that Don, an eighty-four-year-old man, knew how to use a computer or email. With the permission of the federal court, Tim dismissed his suit against the remaining defendants, after he concluded that Micue's assertion of the Fifth Amendment would make prosecution of the case untenable.

¶6 Thomas filed this case shortly thereafter. Thomas alleged that Tim and his attorney had filed the federal court litigation with malice and without probable cause, and that they had conspired to do so to cause Thomas expense and gain an advantage in the Big Giant litigation. Tim and his attorney filed motions for summary judgment, arguing various defenses to Thomas's action. The district court found that Tim had probable cause to file the federal court action and granted both defendants' motions, entering judgment in their favor. Thomas appeals.

## STANDARD OF REVIEW

¶7 Title 12 O.S.2011 2056 governs the procedure for summary judgment. A motion for summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* Where the evidence and the inferences to be drawn therefrom permit only one conclusion, the court may decide the issue as a matter of law. *Morales v. City of Oklahoma City*, 2010 OK 9, ¶29, 230 P.3d 869. We review the district court's legal conclusions pursuant to the de novo standard of review. *Carmichael v. Beller*, 1996 OK 48, ¶2, 914 P.2d 1051.

## ANALYSIS

¶8 The sole issue in this appeal is whether there are disputed issues of material fact regarding whether Tim had probable cause to file the federal court action because, as the district court correctly determined, the existence of probable cause "constitutes a complete defense in an action for malicious prosecution." *Lewis v. Crystal Gas Co.*, 1975 OK 26, ¶11, 532 P.2d 431. Probable cause is established on proof of "an honest suspicion or belief on the part of the instigator thereof, founded upon facts sufficiently strong to warrant the average person in believing the charge to be true." *Id.* ¶14. This definition establishes subjective and objective components. The initial analysis concerns the mental state of the defendant: Did the defendant have an honest belief in the merits of the suit? If the answer to that question is yes, the analysis focuses on the reasonableness of that belief, based on the facts known to the defendant at the time of filing. "If there is no controversy over the facts, or if the facts are conceded, then it becomes a pure question of law for the court to determine whether there was probable cause or not." *Miller v. Bourne*, 1953 OK 122, ¶0, 208 Okla. 362, 256 P.2d 431 (Syllabus 1).

¶ 9 In this case, the facts concerning probable cause existing at the time Tim filed his federal court suit are not in dispute.

1. One or more persons unlawfully accessed Tim's personal email account during the time contentious litigation between Tim and his father was pending.

2. Tim investigated the matter, and based on what he discovered, issued a subpoena to his internet service provider. As a result of the information provided in response to his subpoena, Tim learned that computers owned by Big Giant and Kevin Micue were used on numerous occasions to gain unlawful access to his personal email account. Micue was Big Giant's long-time employee and was employed by Big Giant at the time the unlawful access to Tim's personal email account occurred.

3. Thomas was one of three people who had access to, and did use, the Big Giant computer that was used to gain unlawful access to Tim's personal email.

4. Thomas and Micue were the two people responsible for and most knowledgeable about Big Giant's computers.

5. Thomas supported and was actively involved in his father's litigation against Tim, and there was personal animosity between the two brothers.

6. After Tim left Big Giant in 2005, the company hired a forensic specialist to gain access to Tim's Big Giant email account because it was otherwise unavailable.

7. Thomas was involved in the effort to gain access to Tim's Big Giant email account after Tim left the company.

8. During his deposition, Micue repeatedly invoked his Fifth Amendment privilege against self-incrimination, refusing to testify whether he had or had not used his personal and Big Giant computers to gain unlawful access to Tim's personal email account.

9. During his deposition, Micue repeatedly invoked his Fifth Amendment privilege against self-incrimination refusing to testify whether Thomas had or had not used the Big Giant computer to gain unlawful access to Tim's personal email account.

10. Based, in part, on the information collected by Tim, the FBI concluded that a violation of federal privacy law had been committed by one or more persons and referred the matter to the United States Attorney for prosecution.

11. The United States Attorney declined to prosecute those involved in unlawfully obtaining access to Tim's personal email account.

12. Tim named Thomas as a defendant in the federal court litigation because he suspected Thomas was one of the people who had gained unlawful access to his personal email account.

Based on these facts, Tim and his attorney filed motions for summary judgment asserting various defenses to Thomas's malicious prosecution case.

¶ 10 Stripped of its *ad hominem* focus, Thomas's response to Tim's motion for summary judgment relies on Thomas's interpretation of the relevant facts, without regard to the issue before the district court: What is the import of those facts from Tim's point of view? For example, Thomas attempts to discredit Tim's "suspicion" that his email account had been accessed after his brother-in-law was served with a subpoena in the Big Giant litigation by pointing out numerous other people who could have disclosed information about the planned photography session. Whether Tim's suspicion was well founded or not, it is undisputed that, acting on his suspicion, Tim discovered that his personal email account had been unlawfully accessed.

¶ 11 Thomas makes only two substantive arguments in response to Tim's motion for summary judgment. First, he disputes the fact that a Big Giant-owned computer was used to unlawfully access Tim's personal email account. Thomas cites a letter from Tim's internet service provider produced in response to Tim's subpoena that states there is "no history of logins" to Tim's email account from the Big Giant computer. Thomas argues that Tim and his attorney were "long ago" aware of this letter and that they knew "there were no log-ins by Big Giant Warehouse's computer address to Tim Fox's personal account" before they filed the federal

litigation. Thomas's supporting exhibit does not include the attachments to the letter, which clearly show that the statement quoted by Thomas is an obvious mistake. Those attachments document the time, date and duration of access to Tim's personal email account from the IP address assigned to the Big Giant computer. Further, Thomas does not respond to the report of the defendants' computer expert, who specifically discusses the complete exhibit and states: "These records can only conclude one fact that on December 2nd, 2008 at 9:14am a computer located at Big Giant Warehouse ... was used to gain access to [Tim Fox's personal] email account." If Thomas's misrepresentation of this evidence was not intentional, it evidences, at least, inexcusable indifference to his obligation of honesty before the trial tribunal.

¶ 12 Second, Thomas argues that Tim did not have probable cause to file the federal suit because, before Tim filed that suit, Thomas testified that he did not personally access Tim's personal email account or direct anyone else to do so. But Thomas's testimony is not conclusive on this point. Here, we have the opposite circumstance from that presented in *Poafpybitty v. Skelly Oil Company*, 1973 OK 110, ¶17, 517 P.2d 432 (affidavit of interested party in support of summary judgment discounted to the extent of self-serving statements). We do not deal with the statement of a party interested in the result of a suit and seeking to obtain summary judgment, the credibility of which should be determined by a jury unless the "statement ... is uncontroverted and has indication of support elsewhere in the record." *Id.* Thomas is seeking to avoid summary judgment by "creating" an issue of fact with his self-serving testimony. Further, Thomas's testimony is not uncontroverted or otherwise supported by the record. Thomas's testimony is the only evidence in this record suggesting that Tim did not have probable cause to file the federal court litigation. More importantly, Thomas's argument misses the point. The truth or lack thereof of Thomas's testimony is not the issue. The issue is whether it was unreasonable for Tim to ignore Thomas's testimony when deciding whether to file the federal suit. Given the acrimony between these

brothers, as demonstrated in part by the tone of Thomas's briefing in this case, Thomas has failed to show that Tim was not entitled to an "honest suspicion" regarding the truth of Thomas's testimony. *Lewis v. Crystal Gas Co.*, 1975 OK 26, ¶14, 532 P.2d 431.

¶ 13 Consequently, Thomas has failed his burden of proving that Tim lacked probable cause to file the federal litigation. *Page v. Rose*, 1975 OK 176, ¶16, 546 P.2d 617 ("[T]the burden of proving a lack of probable cause is upon the plaintiff in a malicious prosecution case."). As a result, we need not consider the other arguments asserted by Thomas in his summary judgment briefing. On proof of probable cause, "the other elements urged, such as malice and conspiracy, are immaterial." *Towne v. Martin*, 1945 OK 296, ¶14, 196 Okla. 510, 166 P.2d 98.

¶ 14 Thomas's response to Tim's attorney's motion for summary judgment essentially concedes the facts asserted to be material. Nonetheless, to the extent Thomas does raise issues of fact, they are immaterial. Lack of probable cause is one of the "five essential elements" of Thomas's malicious prosecution claim against Tim. *Id.* ¶9. It follows that if the plaintiff in a malicious prosecution action must prove that a case was filed without probable cause in order to recover against the defendant who filed the case, a plaintiff who cannot do so has no malicious prosecution claim against the attorney who prepared the defendant's case. Therefore, this Court also holds, as we have previously, that an attorney who prepares a lawsuit is not liable for malicious prosecution if the attorney's client had probable cause for filing that action. *Peterson v. Underwood*, 2009 OK CIV APP 82, ¶21, 220 P.3d 1158 (citing 52 Am. Jur. 2d *Malicious Prosecution* 92-94 (2000)).

## CONCLUSION

¶ 15 Probable cause for the filing of a lawsuit is a complete defense to a malicious prosecution action based on that suit. *Page v. Rose*, 1975 OK 176, ¶16, 546 P.2d 617. The undisputed facts in this case show that Tim Fox had an honest suspicion that his brother,

Thomas, was one of the people who had gained unlawful access to his personal email account. The facts known to Tim at the time he filed the federal court action, which is the subject of Thomas's malicious prosecution case, were "sufficiently strong to warrant the average person in believing the charge to be true." *Lewis v. Crystal Gas Co.*, 1975 OK 26, ¶14, 532 P.2d 431. Consequently, Thomas Fox has failed to meet his burden of proving that Tim lacked probable cause to file the federal court litigation, much less that there are disputed issues of material fact regarding that issue. Likewise, the existence of probable cause for the client's filing of a lawsuit is also a complete defense to a malicious prose-cution action against the attorney who pre-pared that lawsuit. The judgment of the district court in favor of Tim Fox, Charles A. Dickson, III and Charles A. Dickson, III PLLC is affirmed.

¶ 16 **AFFIRMED.**

GOODMAN, C.J., and WISEMAN, P.J. concur.